HAYNIE, *Guardian, et al., Appellants,* v. THE KNIGHTS TEMPLARS AND MASONS' LIFE INDEMNITY COMPANY.

### In Banc, June 8, 1897.

1. **Life Insurance**: SUICIDE: CLAUSE IN POLICY OF ASSESSMENT COMPANY. The entire article of the Revised Statutes concerning insurance companies on the assessment plan, is, with a few exceptions, a complete statute within itself; which view is enforced by the proviso of section 5869, which says that: "Nothing herein contained shall subject any corporation doing business under this article to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth." This proviso does not require an insurance company on the assessment plan to show as a defense that the policy holder at the time he applied for his policy, did so in contemplation of suicide.

2. ———: ———: ———: CONSTITUTIONAL STATUTE: DISCRIMINATION. The Constitution gives to the legislature the right to discriminate between the liabilities of old line insurance companies and those companies doing business on the assessment plan.

Haynie v. Knights Templars & Masons' Indm. Co.

3. ———: ———: INSURANCE IN CONTEMPLATION OF SUICIDE. That part of section 5855, Revised Statutes 1889, concerning suicide as a defense in suits on life insurance policies, does not apply to insurance companies doing business on the assessment plan.

4. ———: ———: ———: INSANITY. The policy sued on contained a clause that avoided the policy "in case of the self-destruction of the holder of this policy whether voluntary or involuntary, sane or insane." *Held*, that the beneficiaries of the insured person could not recover, although it was admitted that, at the time the insured person committed suicide, he "was insane to such an extent as to be unable to form an intent to take his own life." Insanity, however much it may deprive the policy holder of volition, does not avoid such a clause in a policy of an assessment insurance company, nor is such a clause in anywise lessened or overridden by section 5855, Revised Statutes 1889.

5. ———: ———: ———: ———. The distinction made in *Adkins v. Columbia Life Insurance Co.*, 70 Mo. 27, that the defense of suicide can be made only in case the insured person is guilty of an "intelligent, conscious, criminal self-destruction," held not to apply to a policy that by its terms excuses the company from payment if the suicide was "voluntary or involuntary, sane or insane."

6. ———: SUICIDE: INSANITY. If the policy of a company doing life insurance on the assessment plan contains a clause that the company is excused from payment if the insured person commits suicide, whether such person is "sane or insane" or the self-destruction is "voluntary or involuntary," suicide is a complete defense, however insane the insured person may be.

*Appeal from Saline Circuit Court.*—HON. RICHARD
FIELD, Judge.

AFFIRMED.

Agreed statement on which the case was tried:
"It is admitted that the defendant is a corporation duly organized under the laws of the State of Illinois, as an insurance company on the assessment plan. That since the 18th day of June, 1888, it has been doing business in the State of Missouri, as an insurance company upon the assessment plan, it having at that time and all times since complied with the laws of the

State of Missouri, in reference to insurance companies on the assessment plan, and being at said time and all times since authorized by the laws of said State and certificate duly issued by the insurance department of said State so to do; that on the 6th day of June, 1889, Jacob Greenabaum made his application in writing to the defendant to become a member of said company (defendant); that such application so made by said Greenabaum contained among others the following question and answer:

"'Q. On what basis as to amount of benefits do you desire to be admitted?' To which question said Greenabaum answered: 'A. $5,000 and all money paid in assessment for the first five years except in case of my suicide or self-destruction sane or insane, voluntary or involuntary, then the amount should only be the money paid in assessment,' and that said application contained the further statement: 'And I do hereby agree that the statements and representations contained in the foregoing application and declaration shall be the basis of the contract between me and the Knight Templars and Masons' Life Indemnity Company; I further agree if accepted to abide by the constitution, rules, and regulations of the company as they now are or may be constitutionally changed hereafter.' That such application was forwarded to the company at its general office in the city of Chicago and that thereafter the defendant issued and delivered to the said Greenabaum the certificate of membership sued on in this case.

"It is further agreed that said Greenabaum paid all the assessments and dues made upon or demanded of him by defendant company, and had complied with all requirements and kept all the covenants specified in said certificate to be by him kept, except as to taking his own life, which condition is as follows: 'In case

of the self-destruction of the holder of this policy whether voluntary or involuntary, sane or insane . . . . . . this policy shall become null and void and the widow and heirs, or devisees of said member, shall have no claim for benefits on this company, provided that in case of such self-destruction or suicide of the holder of this policy, then this company will pay to his widow and heirs or devisees only such an amount on this policy as the member shall have paid to this company on this policy in assessments on the same without interest.' That on the eleventh day of January, 1893, the said Greenabaum died from the effect of a wound caused by a pistol shot, which pistol was discharged intentionally, not accidentally, while in the hand of the said Greenabaum, and that the immediate effect thereof was the death of said Greenabaum, and that at the time the said Greenabaum was insane to such an extent as to be unable to form an intent to take his own life; that due proof of the death of said Greenabaum was made as required by said certificate.

"It is further admitted that an assessment made upon the members of the defendant association as provided in the policy, by-laws, and constitution of defendant, would produce at least the amount of $5,000. That the amount said Greenabaum has paid in assessments to defendant company amounted to the sum of $252.15, for which sum defendant admits its liability."

*Davis & Duggins* and *Boyd & Murrell* for appellants.

(1) The provision in the policy sued on to the effect that said contract or policy shall be void "in case of self-destruction of the holder of this policy, whether voluntary or involuntary, sane or insane, then

this policy shall become null and void," is a void provision and stipulation under the statutes. R. S. 1889, sec. 5855; *Keller v. Travelers Ins. Co.*, 58 Mo. App. 557. (2) The answer admits that defendant is an insurance company, and the courts have so held. *Knights Templars and Masons Life Indem. Co. v. Berry*, 46 Fed. Rep. 439. (3) The language of section 5855, Revised Statutes 1889, is plain. It refers to all suits upon policies issued by any company doing business in this State. Is this section repealed by the act of 1887, page 199, being article 3, Revised Statutes 1889? In the revision of 1889 the act of 1887 was incorporated in the same chapter (89) and section 5855 was retained as a part of the law governing insurance companies. (4) The provision at the end of section 5869, was evidently intended to regulate assessment plan companies, in their dealing with the State, and to affect their liability only to the State, in so far as doing business is concerned and not intended to repeal section 5855, nor to permit assessment plan companies to come into the State independent of the general insurance law. (5) There can be no such thing as "involuntary suicide." It would mean an accident or death by accident—*Ins. Co. v. Crandall*, 120 U. S. 527—and these words should be rejected as of uncertain meaning and void. *Penfold v. Life Ins. Co.*, 85 N. Y. 317. (6) The agreed statement of facts shows that the insured died from the effects of a wound caused by a pistol shot, which pistol was discharged intentionally, not accidentally, while in his hand, and that at the time he was insane to such an extent as to be unable to form an intent to take his own life. The condition in the policy does not attach where there is an absence of intent. *Edwards v. Ins. Co.*, 20 Fed Rep. 661; *Penfold v. Ins. Co.*, 85 N. Y. 317; *Newton v. Ins. Co.*, 76 N. Y. 426; *Kirts v. Ins. Co.*, 29 Fed. Rep. 198, 201,

202; *Streeter v. Western Ins. Co.*, 65 Mich. 199; *Bigelow v. Berkshire Ins. Co.*, 93 U. S. 284. (7) The burden is on the defendant to prove intentional suicide, and if the evidence is conflicting the policy will be enforced. *Ingersol v. Ins. Co.*, 47 Fed. Rep. 272; *Meacham v. Ins. Co.*, 120 N. Y. 237; *Mutual Ins. Co. v. Tillman*, 19 S. W. Rep. 294; *Walcott v. Ins. Co.*, 64 Vt. 221; *Waycott v. Ins. Co.*, 24 Atl. Rep. 992; Bacon on Benefit Soc., sec. 336, p. 676.

*Hugh C. Smith* for respondent.

(1) That section 5855 does not apply to insurance companies doing business in this State on the assessment plan is no longer, if it ever was, an open question. *Hanford v. Massachusetts Benefit Association*, 122 Mo. 50; *Sparks v. Knight Templars & Masonic Life Indt. Co.*, 61 Mo. App. 109; *Theobald v. Knights of Pythias*, 59 Mo. App. 87; R. S. 1889, sec. 5869. (2) Respondent insists that notwithstanding deceased was unable to form an intent to take his life, that the condition of the policy, *i. e.*, "in case of his self-destruction, whether voluntary or involuntary, sane or insane," was valid and binding upon the deceased, as it is upon the parties hereto, and that no recovery can be had, except for the amount paid in assessments on said policy. *Adkins v. Ins. Co.*, 70 Mo. 27; *Hanford v. Ins. Co.*, *supra; Sparks v. Life Indemnity Co.*, *supra; Theobald v. Knights of Pythias*, *supra; De Gogorza v. Ins. Co.*, 65 N. Y. 232; *Biglow v. Ins. Co.*, 93 U. S. 284; *Riley v. Ins. Co.*, 25 Fed. Rep. 315; *Salentine v. Ins. Co.*, 24 Fed. Rep. 159; *Billings v. Ins. Co.*, 64 Vt. 78; *Scarth v. Ins. Co.*, 75 Iowa, 364; *Dennis v. Ins. Co.*, 84 Cal. 570; 74 Mich. 592 and 611. (3) The contract between deceased, and respondent was, that in case of the self-destruction of said Greenabaum, "whether vol-

untary or involuntary, sane or insane, . . . . . . . the policy should become null and void . . . . . . . provided that in case of the self-destruction or suicide of the holder then this company will pay . . . . . . . . only such an amount on this policy as the member shall have paid to this company on this policy in assessments without interest." This was a valid agreement binding on all. A case exactly in point is *Salentine v. Ins. Co.*, 24 Fed. Rep. 159.

ROBINSON, J.—This suit was instituted by the guardian of the heirs of one Joseph Greenabaum on the policy of insurance set out in the above agreed statement of facts for $5,000 in the first count of the petition, and for the further sum of $300, the amount of assessments alleged to have been paid to the defendant company by the said Greenabaum on said policy during his lifetime, in the second count. Defendant by answer admitted the making, issuance, and existence of the policy sued upon, and set out in full many of its conditions, terms and requirements, among which are the following: "In case of the self-destruction of the holder of this policy, whether voluntary or involuntary, sane or insane . . . . . the policy shall become null and void and the widow and heirs or devisees of such member shall have no claims for benefits on this company, provided that in case of such self-destruction or suicide of the holder of this policy, then this company will pay to his widow and heirs or devisees only such an amount on this policy as the member shall have paid to this company on this policy in assessments on same, without interest." And further pleaded that as a basis for the certificate or policy that was issued by defendant to said Greenabaum a written application signed by him was sent to the defendant company containing among others this question and his answer

thereto: "On what basis as to amount do you desire to be admitted? Answer: $5,000, and all the money paid in assessments for the first five years, except in cases of my suicide or self-destruction, sane or insane, voluntary or involuntary, then the amount shall be only the money paid in assessments." And further that said application contained the following declaration and agreement on part of the insured: "I do hereby declare and I hereby agree that the statements and representations contained in the foregoing application and declaration shall be the basis of the contract between me and the Knights Templars & Masons' Life Indemnity Company." And further answering, the defendant says that the said Greenabaum died from the effect of a pistol shot inflicted upon himself by his own hand; that he took his own life and committed suicide and self-destruction. Under the issues thus raised and upon the above agreed statement of facts, the case was submitted to the court and the following declaration of law was given at the instance of the defendant, and a judgment in accordance therewith was duly entered in time. "Under the law and agreed statement of facts in this case the finding must be for the defendant, except for the sum of two hundred and fifty two dollars and fifteen cents, the sum admitted to have been paid by deceased Greenabaum in assessments to defendant." From the judgment so entered plaintiff prosecutes this appeal, after the usual preliminaries.

But two questions are presented in the discussion of this case. *First.* What meaning is to be given to the clause of the policy: "In case of self-destruction of the holder of this policy, whether voluntary or involuntary, sane or insane, this policy shall become null and void?" And, *second*, does section 5855, Revised Statutes 1889, apply to insurance companies doing business in this State on the assessment plan? That

section reads: "In all suits upon policies of insurance on life hereafter issued by any company doing business in this State, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

Plaintiff contends that the above recited condition in the policy is void, and is made unavailing to defendant by said section 5855; and further that even though said section shall be held not to apply to defendant company, still the conditions of the policy do not attach when it is shown as in this case, that the insured was insane to such an extent as to be unable to form any intent to take his life.

I. Does section 5855, Revised Statutes 1889, apply to the policy issued by defendant doing business as an assessment plan insurance company, under the provisions of article 3, of chapter 89, of the statute? In the closing sentence of section 5869 of said article 3 we find this language: "*Provided*, always that nothing herein contained shall subject any corporation doing business under this article to any other provisions or requirements of the general insurance laws of this State, except as distinctly herein set forth." No such provision as that contained in section 5855, of article 2, is found in article 3, which is, with a few express exceptions, a complete statute in and of itself providing for the incorporation and regulation of associations, societies and companies doing a life or casualty insurance business on the assessment plan, the mode and manner of the conduct of their busness and how they shall be controlled, operated, etc.

The language of section 5869, of article 3, can mean nothing short of a declaration by the law-making

power of the State, that the provisions of section 5855, concerning defenses in case of suicide, shall not apply to assessment plan insurance companies, and no question can be made as to the constitutional power of the legislative body of the State to so discriminate in favor of the assessment plan companies, however much we may question the propriety or wisdom of the discrimination. The history of the act, as well as the positive and unqualified wording thereof, lead unerringly to the one conclusion, that it was the intention of the legislature that assessment insurance companies and fraternal associations were to be withdrawn from the operations of the provisions of the general insurance laws of the State, except as distinctly set forth in said article.

In the case of *Hanford v. Mass. Ben. Association*, 122 Mo. 50, the same position was assumed by plaintiff there as is asserted by plaintiff here. There it was sought to charge an assessment insurance company on its policy issued to plaintiff on the life of her husband notwithstanding certain misrepresentations made by plaintiff's husband, that in no way contributed to the contingency on which the policy became payable. The company contending, that section 5849, of article 2, regarding misrepresentation did not apply to it, by reason of the provision of section 5869 (above quoted) exempting assessment companies from its operation. Appellants and plaintiff in that case contended and urged that no good reason could be suggested why the provisions of sections 5849 and 5850, of article 2, should be made to apply to old line or premium paying and mutual insurance companies, and not to companies doing business on the assessment plan, as plaintiff here contends, for the application of the provisions of section 5855, that no valid reason can be shown why a policy holder under an assessment company should be

denied the benefits given to the holder of an old line or mutual insurance policy, by the general statute laws of this State.

The author of the opinion in the *Hanford* case sharing with the appellant there as here, the same view as to inability to see any good reason why the provision named should apply to old line and mutual insurance companies and not to those doing business on the assessment plan, did however, see and recognize the binding force of section 5869, and in deciding that case uses this language: "We are at a loss to see any good reason why the two sections concerning misrepresentation should be applied to what are denominated old line companies and not to these assessment plan companies, but the language of the proviso just quoted (5869) is strong and explicit. By it corporations doing business under that article, (3), are not subject to any other *provision or requirements* of the general insurance laws, *except as distinctly herein set forth.* The effect of this proviso is to say that the two sections concerning misrepresentation shall not apply to assessment plan companies. . . . . We must therefore conclude that sections 5849 and 5850 do not apply to assessment plan contracts." The existence of the positive and explicit language of the proviso of section 5869, furnish alike the rule and its reason for the discrimination made between the holder of policies issued by old line and assessment insurance companies, and must be upheld and maintained without regard to what we may think of its propriety or wisdom. All that has been said as to the inapplicability of sections 5849 and 5850 to the assessment plan insurance companies by reason of the provisions of section 5869 of article 3, for the same reason and with equal force is to be said of section 5855.

II.   If the words of avoidance used in the policy

in suit are not within the influence of the provisions of section 5855, Revised Statutes 1889, by reason of section 5869, in article 3 thereof, can it be maintained, as contended by appellant, that the restriction against liability in the policy "in case of self-destruction of the holder thereof whether voluntary or involuntary, sane or insane" do not attach when it is shown (as by the agreed statement of facts in this case) that "the deceased died from the effect of a pistol shot discharged intentionally, not accidentally, while in the hands of deceased, and while he was insane to such an extent as to be unable to form an intent to take his own life?" The respondent contends that notwithstanding deceased was unable to form an intention to take his own life, that the conditions of the policy, "in case of his self-destruction, whether voluntary or involuntary, sane or insane," was valid and binding upon the deceased and all parties hereto and that 'no recovery can be had, except for the amount paid in assessments on the policy without interest, as limited by the express provision of the policy itself, mutually agreed upon by the parties thereto. The wording of the most essential features of the agreed statement of facts, filed in this case, is most unhappy, if not to say confusing and to some extent contradictory. In one part of the statement we are told that "the said Greenabaum died from the effect of a pistol shot which was discharged intentionally, not accidentally," when further on in the same sentence we find the following: "And that at the time the said Greenabaum was insane to such an extent as to be unable to form an intent to take his life."

To one disposed to be critical, it might be difficult to reconcile the statement that the deceased died from the effect of a pistol shot which was discharged intentionally while in the hand of the deceased upon and

against his own person, when at the same time it is further admitted that he was insane to such an extent as to be unable to form an intent to take his own life, on the ground that one could not intentionally do that which he was unable to form an intention to accomplish for want of sufficient will power (resulting from the disease of insanity) from which an intentional act could emanate. For the sake of this case, however, we will give the agreed statement of facts as to the occurrence of the insured's death the construction most favorable that can be taken in aid of plaintiff's claim. We will ignore the words ''intentionally not accidentally'' and hold that the dominating words of the sentence are ''that at the time the said Greenabaum was insane to such an extent as to be unable to form an intent to take his own life;'' that he was unable to comprehend or appreciate either the moral or physical effect of the operation that resulted in his death. Was death of the insured under these circumstances within the contemplation of the parties to the policy, where the express words of avoidance written therein are, ''in case of the self-destruction of the holder of this policy whether voluntary or involuntary, sane or insane, this policy shall become void?''

In the case of *Adkins v. Columbia Life Insurance Company*, reported in 70 Mo. 27, which was an action on a policy of insurance issued to plaintiff on the life of her husband containing these words of exemption ''that in case of the death of said insured by his own act and intention whether sane or insane the company shall not be liable,'' and where under the agreed statement of facts upon which the case was submitted it appeared that plaintiff's husband committed suicide and ''that at the time he committed suicide he was insane; that his mind was so far impaired that he did not understand the moral character, the general nature

and consequences of the act; and that the act of self-destruction was the result of his insane condition of mind," this court, through HOUGH, J., after an exhaustive review of the leading cases both in this country and England, upon the question as to whether self-destruction by one in a fit of insanity is within the condition of a policy when the words of avoidance are that if the insured "shall committ suicide" or "shall die by his own hand or act" or "shall effect his own self-destruction" and other like kindred expressions, in the course of the opinion expressed the existence of an irreconcilable conflict of authorities; those on the one line contending that the policy would be avoided if the assured at the time of causing or effecting his death, was conscious of the physical nature and consequences of the act and intended thereby to put an end to his own life; and those on the other maintaining that the policy would not be avoided unless the insured was also conscious of the moral quality or criminality of the act. Judge HOUGH closed the opinion by finding for the insurance company with these remarks: "The language of the agreed statement denoting the state of the mind of the assured having been adopted from the opinion in *Terry v. Ins. Co.* must be regarded as having been used by the parties in the sense in which it was employed in that opinion, and as it appears from such statement so construed that the mind of the assured was only so far impaired that he did not understand the moral quality and consequences of his act, it follows from the views we have expressed that the defendant is not liable for the full amount of the policy."

Whether by that opinion it is meant to restrict the non-liability of the insurance companies, where the words of avoidance used in the policies are "in case of the death of the insured by his own act and intention, whether sane or insane" to such cases, as where the

assured though insane was conscious of the physical nature and consequences of his acts and intended to put an end to his life, or to those cases where the reasoning faculties of the insured is shown to be so far impaired that he was not able to understand the moral character, the general nature, consequences and effect of the act he commits, it is not altogether clear, as the facts of the case only called for an opinion upon the effect of the avoiding clause of a policy where the condition of the mind of the assured was shown to have been only so far impaired that he did not understand the moral quality and consequence of his act.

But whether the case of *Adkins v. Insurance Co.* be regarded as an authority in favor of the contention of the respondent herein or not, as is most vigorously insisted by him, and without regard to what views we might entertain as to the requisite mental power necessary to be possessed by an insured at the time of effecting his own destruction, to authorize the defeat of an action when the words of avoidance in a policy are "in case of suicide," "death by one's own hand, act, or intention," or "in case of the self-destruction of the insured," we think that when to those words is superadded the words "whether voluntary or involuntary, sane or insane," the issue as to the extent of the mental capacity of the assured is eliminated, and all conditions of insanity are included within the exemption.

To hold otherwise, and assert as contended by appellant, as well as by some of the authorities cited, that notwithstanding the superadded words, the exemption is aimed at only such as are guilty of an "intelligent, conscious, criminal self-destruction" and not to all insane insured who take their own life, is to deny to the added words "whether voluntary or involuntary, sane or insane," any significance whatever.

To say that the words "voluntary or involuntary, sane or insane" added to the words "in case of the self-destruction of the insured" used in the policy in suit, will not avoid a liability on part of the insured if he shall effect his own self-destruction, and add by way of argument, "that the policy is avoided only if the insured shall die by his own hand, and that one does not die by his own hand if death results from an irresistible insane impulse, any more than if it was effected by an outside independent agency or by an accident, and that death by accident, some external independent agency, or by an insane irresponsible impulse is in fact the same thing," is more technical than sound, and savors more of the work of the partisan advocate in the interest of his client's necessities, than the utterance of a court whose office it is to look to the intention of the parties, to the contract of insurance at the time it was made and executed, and to construe the language and terms employed as they are understood and used by the great majority of mankind to whom like policies similarly worded are daily addressed. The same process of reasoning would lead to the conclusion just as logical, that a contract of insurance could not be made exempting the insurance company from liability in case of death resulting from insanity, a position certainly not tenable in view of the history of the business of life insurance in this country as all have seen it conducted. Whatever meaning the authorities may give to the words "suicide," "death by one's own hand or act," or "self-destruction," etc., which are practically used as synonymous terms in insurance policies when standing alone, it is most obvious that they can not be said to control the condition of avoidance, which in the case of this policy, go further and substantially declare that it shall make no difference whether the self-destruction was voluntarily

or involuntarily effected, or whether at the time death was effected the insured was sane or insane.

It seems idle to contend that the insurance companies did not intend and that the insured did not understand by the addition of the words, "voluntary or involuntary, sane or insane," to the words "suicide," "self-destruction," "self-murder," and the like, after judicial construction had been given to the last named words unfavorable to the contention of the companies in all the earlier cases, when the insured was shown to have been insane at the time of effecting his death, and the companies sought to deny their liability, that some less restricted liability was not contemplated by both the insurer and insured.

Some of these qualifying and limiting words have been adopted by the insurance companies and inserted into the avoiding clauses of their policies, from suggestions that are to be found in the earlier opinions of the courts, as to what words the company might have chosen in addition to the general words "suicide," "self-murder," and "self-destruction," and such like kindred expressions, if the insurance companies desired to make the exemption in their policies effectual to defeat all responsibility when the death of an insured was effected as the result of his own effort regardless of the question of the mental power and capacity of the insured at the time of accomplishing the deed. The words "voluntary or involuntary, sane or insane," and other similar qualifying and limiting words, seem to have been introduced into the modern policy for the express purpose of avoiding the force of the interpretation which had been given by the courts to the general words that had theretofore been used, and to obviate all uncertainty as to the non-liability of the company in all cases when death was effected as the result of action on the part of the insured, whatever

may be said as to the condition or state of the mind of the deceased at the time. Any other construction robs the added words of all meaning, and turns them in upon themselves, as it were, to effect their own self-destruction.

Courts will not become so critical or analyze so closely the literal, technical meaning of words or expressions employed in the everyday business affairs of life as to deny to them their common and popular meaning, as understood and interpreted by the multitude to whom those expressions are daily addressed; but will view and construe them in the light of the public understanding and assume that such was the aspect in which they were viewed and considered by the parties to the contract at the time of using them. The judgment of the trial court will be affirmed. Judges BRACE, MACFARLANE and BURGESS do not sit. BARCLAY, C. J., GANTT and SHERWOOD, JJ., concur.