GRACE BAKER, APPELLANT, v. NATIONAL HOME LIFE INSURANCE COMPANY, A CORPORATION, RESPONDENT.—195 S. W. (2d) 912.

Kansas City Court of Appeals, May 27, 1946

*Maurice J. O'Sullivan, Philip M. Wilson,* and *John G. Killiger, Jr.,* for appellant.

992

*Moser, Marsalek & Dearing,* and *G. W. Marsalek* for respondent.

DEW, J.—Plaintiff (appellant), as beneficiary named in an insurance policy on the life of her husband, sued the defendant insurer (respondent) for the face of the policy, $2000, with interest from March 24, 1945. The case was tried before the court without a jury and on an agreed statement of facts. From a judgment for defendant, plaintiff has appealed.

It is conceded by the parties that defendant is a Missouri corporation, duly organized, existing, licensed, and doing business therein as a stipulated premium plan insurance company under the provisions of Article IV, Chapter 37, Revised Statute Missouri, 1939, Sections 5870-5894, inclusive, and was engaged in the insurance business on said plan, with its chief place of business and office in St. Louis, Missouri; that on September 12, 1944, within the state of Missouri, it duly issued and delivered to Henry E. Baker, the insured, a resident of Missouri,

the policy in question, on the stipulated premium plan, in consideration of a monthly premium of $8.11; that all premiums due had been paid by the insured during his lifetime; that on February 8, 1945, Henry E. Baker committed suicide.; that he did not contemplate suicide at the time he applied for the policy; that due proofs of death were furnished within proper time, and demand was then made for payment of $2000, the face of the policy, which was refused by the defendant as per its letter of March 25, 1945, enclosing a check for $48.66, the total amount of premiums paid; that in said letter the defendant denied further liability under Provision 7 of the policy, excepting as a risk not assumed, the death of insured by self-destruction within a year from the date of the policy; that plaintiff rejected the tender and returned the check to defendant, renewing her demand.

The sole question here submitted is whether or not defendant is relieved from liability to pay the policy because of Provision 7 therein; which purports to exclude the risk of death by self-destruction within one year from date of the policy.

At the top of the policy there appear these words: "Ordinary Life Policy Continuous Premiums Non-Participating." The insuring words are that the company "Does hereby promise to pay the sum insured to the beneficiary hereof, Grace Baker, wife . . . upon receipt of due proofs of death of the insured, Henry E. Baker," etc. The face amount is $2000, the annual premium $81.10, monthly premium $8.11, the premium period one month, and a like amount is specified for successive monthly periods. The age of the insured is shown as fifty years. At the bottom of the first page of the policy there appear these words: "This policy is issued in accordance with the provisions of Art. IV, Chap. 37, R. S. of Mo., 1939." The article referred to pertains to stipulated premium plain insurance. As a part of the policy there is, among the endorsements, the following:

"7. RISKS NOT ASSUMED: If the insured shall die from self destruction, sane or insane, within one year from the date hereof, the amount payable hereunder shall be the actual premiums paid hereon."

Among the general provisions pertaining to life and accident insurance, (Article II, Chapter 37, Revised Statute Missouri, 1939), Section 5851, commonly known as the "suicide" statute, provides:

"In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

That section, without change material here, was passed in 1879 (Revised Statute Missouri, 1879, Sec. 5982.) In 1899, a new article was

passed by the Legislature providing for "Insurance on the Stipulated Premium Plan" (now Art. IV, Chap. 37, Secs. 5870-5894, incl.). Part of said Article IV, Section 5873, reads as follows:

"Any corporation, company or association issuing policies or certificates promising money or other benefits to a member or policyholder, or upon his decease, . . . which money or benefit is derived from stipulated premiums collected in advance from its members or policyholders, and from interest and other accumulations and wherein the money or other benefits so realized is applied to or accumulated solely for the use and purposes of the corporation . . . and for the necessary expenses of the corporation, and the prosecution . . . of its business, and which shall comply with all the provisions of this article, shall be deemed to be engaged in the business of life insurance upon the stipulated premium plan and *shall be subject only to the provisions of this article,* except that the provisions of sections 5794 and 5795, Revised Statutes 1939, shall be applicable. It shall be unlawful for any corporation, company or association not having complied with the provisions of this article to use the term stipulated premium in its application or contracts, or to print or write the same in its policies or literature." (Italics supplied.)

Plaintiff contends (1) that the policy under consideration, by its title did not properly designate the same as a stipulated premium plan policy, nor did the policy specify the exact sum to be paid in case of death by suicide within one year, thereby not complying with the statutes regulating such policies; also that the above statute regulates the corporations or societies issuing the policies, and does not govern the policies themselves; (2) that the "suicide" statute (Sec. 5851) is a declaration of public policy in this state and applies to the insurance policy in this case. Defendant contends that the policy is written in full compliance with said Article IV of Chapter 37 of the Revised Statutes of Missouri, 1939, affecting stipulated premium plan policies; that it is such a policy, and so stipulated by the parties, and that as such, under said Section 5873, Revised Statute Missouri, 1939, it is not subject to the "suicide" statute.

Plaintiff further argues that even if the policy is written on the stipulated premium plan, there is no logical or economic reason jusifying its exemption from the "suicide" statute, and presents computations and comparative rates of old line companies to support that conclusion; that the present policy should not have been designated as "Ordinary Life Policy"; that any stipulation in the policy contrary to the "suicide" staute is void under the statute. The plaintiff further claims noncompliance with Section 5879, which requires a policy on the stipulated premium plan to specify the sum of money which it promises to pay on any contingencies insured against, and that Provision 7 of this policy fails so to do.

The policy does not purport to insure against death by self-destruction within a year, but expressly excludes that contingency as a risk not assumed. The refund agreed to in such contingency is not insurance, but mere reimbursement of premiums paid up to the time of cancellation caused by the death under the prescribed circumstances. [Chew's Estate v. Commissioner of Internal Revenue (C. C. A. 5th) 148 Fed. (2d) 76; Rios v. Supreme Forest Woodman Circle, 163 S. W. (2d) 122.] Not only is such a contingency expressly excluded by Provision 7 but, of course, the exact sum due as refund of premiums at the date of such a death could not be predetermined.

In the stipulation of facts, as stated, plaintiff has agreed that defendant was duly organized under the article of the statute authorizing the issuance of stipulated premium plan policies; admitted that "in accordance with the above statutes, defendant, in consideration of a monthly premium of $8.11, executed and delivered to Henry E. Baker its Policy #0-14022 *on the stipulated premium plan.*" (Italics supplied.)

In view of the terms of the policy before us and the above stipulation, we are not justified in considering the policy to be other than a stipulated premium plan policy, nor that its title, designation or refund stipulation violated the statute (Sec. 5873) in the respects claimed. That section applies not only to the companies, corporations or associations doing business under that plan, but necessarily applies to the policies issued by them under such plan.

The remaining and most important question is whether or not the "suicide" statute (Sec. 5851) applies to this policy, despite its express exclusion of the risk of death by self-destruction within a year. If the statute applies, then suicide is no defense here, regardless of Provision 7 of the policy, and defendant is liable for the face of the policy, with interest. If the statute does not apply, then that defense under Provision 7 of the policy is a complete defense to plaintiff's recovery, and the refund of the premiums paid, as tendered, is the limit of defendant's liabiliy.

Narrowing the question further, the exact inquiry is the effect on the policy of the words found in Section 5873, "shall be subject only to the provisions of this article, except that the provisions of sections 5794 and 5795, Revised Statutes 1939, shall be applicable." As seen, Section 5873 is part of the article particularly authorizing and regulating life insurance policies on the stipulated premium plan (Art. IV, Chap. 37, Revised Statute Missouri, 1939). Section 5794 and Section 5795, mentioned in the above quotation from Section 5873, are a part of Article I of the same chapter, which article constitutes the general provisions affecting the state insurance department, and those two sections have to do merely with the examination and investigation of insurance companies and the expense thereof. Do the quoted words of Section 5873 exempt policies on the stipulated premium plan from

the "suicide" statute (Sec. 5851), contained in Article II, Chapter 37, which article declares the general laws on life and accident insurance, so as to permit the enforcement of a clause in such a policy excepting death by self-destruction; or does Section 5851 of the general insurance laws take precedence, and render such provision of such a policy void and unenforceable?

A brief consideration of the legislative history on the subject and related subjects in this state is helpful in ascertaining the legislative intent in question. Following the establishment of the state insurance department in 1869, and the enactment of regulatory statutes of that date affecting life insurance and life insurance companies in this state, many benevolent associations undertook to transact life insurance business in Missouri without compliance with the general insurance statutes. Some statutory concessions were thereafter made in their favor until 1887, when an act was passed providing for the incorporation and regulation of societies and similar organizations doing life and casualty insurance business "on the assessment plan." [Art. III, Chap. 89, Revised Statute Missouri, 1889; present Art. III, Chap. 37, Revised Statute Missouri, 1939]. By this act life insurance companies operating for profit were distinguished from associations doing business on an assessment plan, and a different code was enacted for the regulation of each. As to the validity of such classifications it was said in Northwestern Masonic Aid Ass'n. v. Waddill, 138 Mo. 628, 636, 40 S. W. 648, 650:

"That life insurance companies doing business in this state might well be divided into such classes, and a separate code, appropriate to their different natures, be provided, for the regulation of each class by legislative enactment, cannot be doubted. The classification by which those associations which are doing business for profit are put in one class, and those which are doing business simply to secure some indemnity to the dependent families of its members in case of their death or disability are put in another, is a reasonable and natural one. . . ."

In the act of 1887, pertaining to life insurance policies written on the assessment plan, it was required by Section 5869, Revised Statute Missouri, 1889 (now Sec. 5865, Revised Statute Missouri, 1939, as amended), that foreign corporations issuing such policies shall comply with a certain named section of the general law relating to resident agents of foreign insurance corporations, and then provided:

"*Provided, always,* that nothing herein contained shall subject any corporation doing business under this article to any other provisions or requirements of the general insurance laws of this state, except as distinctly herein set forth and provided."

This statute was later (1897) amended, requiring all assessment insurance companies to conform to three additional named sections of the general insurance laws, including the "suicide" statute; (Bowers

v. Missouri Mutual Ass'n., 333 Mo. 492, 62 S. W. (2d) 1058), but .retaining the last above quoted proviso. ·

Under that proviso, companies doing life insurance business on the assessment plan have been held exempt from the general statute (present Sec. 5843), limiting the materiality of misrepresentations in obtaining an insurance policy; (Aloe v. Fid. Mut. Life Ass'n., 164 Mo. 675, 55 S. W. 993; Jacobs v. Omaha Life Ass'n., 142 Mo. 49; Hanford v. Mass. Ben. Ass'n., 122 Mo. 50, have been held exempt from the "suicide" statute (before that statute was added to those to which the assessment companies are required to conform), Haynie v. The Knights Templars and Masons' Life Indem. Co., 139 Mo. 416; Toomey v. Supreme Lodge Knights of Pythias, 147 Mo. 129, and have been held exempt from taxation on premiums, Northwestern Masonic Aid Ass'n. v. Waddill, 138 Mo. 628, 40 S. W. 648.

In Elliott v. Des Moines Life Ass'n., 163 Mo. 132, 63 S. W. 400, the Supreme Court, regarding the applicability of the "suicide" statute to assessment companies before the amendment of 1897, at page 406, said:

"Having reached the conclusion that the policy in suit is an insurance contract on the assessment plan, and this court having uniformly ruled that insurance companies doing business on the assessment plan are not subject, under section 5869, Rev. St. 1889, to the provisions or requirements of the general insurance laws of this state except as distinctly set forth, 'and that this proviso does not require an insurance company on the assessment plan to show as a defense that the insured contemplated suicide at the time he or she applied for his or her policy' (Haynie v. Indemnity Co., 139 Mo. 416, 41 S. W. 461), and the policy in this case having been issued and the loss having occurred. prior to the passage of the act of 1897 bringing assessment companies within the provisions of the general insurance law concerning suicides (Rev. St. 1889, Sec. 5855; Id. Sec. 5869, repealed by Laws Mo. 1897, p. 130; Rev. St. 1899, Secs. 7896, 7910), it must be ruled that the liability of defendant must be determined by the law in force at the time of the issuing of the policy and the death of the insured, March 2, 1896, and that the provision in the policy that, 'if the insured, within the period of three years from (its) date, die by her own hand, whether sane or insane, this policy shall be null and void, except as to payments made thereon with interest,' was a valid and binding agreement, and suicide within the three years after the date of the policy a complete defense to this action. Haynie v. Indemnity Co., 139 Mo. 416, 41 S. W. 461."

In 1899 the Legislature authorized stipulated premium plan policies. [Secs. 7914, et seq., Revised Statute Missouri, 1899]. The section defining such policies and a company, corporation or association issuing same was Section 7917, Revised Statute Missouri, 1899, which is our present Section 5873, Revised Statute Missouri, 1939, hereinbefore set out. That section, it will be noted, designates the nature of the benefits

required of such policies and the source and application of premiums, and then provides that such companies or associations "shall be subject only to the provisions of this article, except that the provisions of sections 5794 and 5795, Revised Statutes 1939, shall be applicable." As stated, the two general statutes named with such associations are required to comply, have to do only with investigation and examination of such companies and the expense thereof.

Appellant here contends that the "suicide" statute declares a principle of public policy in this state, and that that statute would take precedence over any later statute conflicting therewith. She cites Langan v. United States Life Ins. Co., 344 Mo. 989, 996, 130 S. W. (2d) 479, 483. The "suicide" statute was not there involved nor a stipulated premium plan policy as here, but the issue was the effect of the misrepresentation section of the general insurance laws on a clause of the policy providing for age adjustment. In distinguishing the issue there at hand from the "suicide" statute involved in cases discussed by the court, the opinion states, among other things, that:

"However, we think there is a marked distinction between the effect of the Suicide statute and the Misrepresentation statute. The former has no reference to statements made *before* the policy is issued. It says: '*In all suits upon policies* . . . it shall be no defense,' etc. That means that, no matter what provisions may be contained in the policy, suicide cannot be interposed as a defense. In other words, the statute declares the policy of this State to be that an insurance company cannot defend on the ground of suicide (unless contemplated at the date of the application) even though the contract (policy) provides for such defense. The Misrepresentation statute deals with statements made before the issuance of the policy and, we think, with statements made as an inducement for the issuance of the policy."

We do not think the Supreme Court by the quoted statement meant to determine thereby that the "suicide" statute declared the public policy of the state other than as to the insurance policies and companies to which, under the statutes, the general insurance statutes applied, nor did it intend to overrule its pronouncement of the right of the Legislature to classify insurance companies under separate or special codes (Northwestern Masonic Aid Ass'n. v. Waddill, *supra*), nor to overrule its decision in Elliott v. Des Moines Life Ass'n., *supra*, heretofore quoted. So far as we are informed, there is no decision or statute declaring it to be the public policy of this state that the "suicide" statute of the general insurance law applies to stipulated premium plan policies or companies writing the same, as to which the article of the statutes authorizing the same plainly provides that companies writing such policies "shall be subject only to the provisions of this aritcle, except . . .," etc.

It is true that the quoted words from Section 5865, relating to assessment companies differ somwhat from those quoted from Section 5873,

relating to stipulated premium plan insurance companies or associations. In the former, the assessment companies are declared subject to certain named sections of the general insurance law, and declared not to be subject to any other provision thereof "except as distinctly herein set forth and provided;" in the latter, it is declared that the stipulated premium plan companies "shall be subject only to the provision of this article, except that the provisions of sections 5794 and 5795, Revised Statutes 1939, shall be applicable." Certain questions occur on comparison of the two. Is the latter proviso any less effective in its limiting qualities than the former? Is the effect of one any more positive or exclusive than the other? Can a court add exceptions to the one any more than it can to the other? By the specific inclusion of certain statutes, did not the Legislature as effectually exclude all others? If the Legislature had intended to apply the "suicide" section (5851) to stipulated premium plan policies, would it not have added that section number in the clause quoted from Section 5873, as it did by amendment to Section 5865 affecting assessment companies?

In Key v. Cosmopolitan Life, Health & Acc. Ins. Co., 102 S. W. (2d) 797, in a suit on a stipulated premium plan policy, the plaintiff therein relied on present Section 6040, Revised Statute Missouri, 1939 of the general insurance statutes to recover attorney's fee for vexatious refusal to pay. That section provides that "in any action against any insurance company .. . . the court or jury may . . . allow . . . attorney's fee." The defendant company, organized and doing business on the stipulated premium plan, contended that the section mentioned did not apply to it, under the limiting provisions of present Section 5873. The court said at page 800:

"It is finally suggested that the allowance of an attorney's fee was erroneous upon the theory that section 5929, R. S. Mo. 1929 (Mo. St. Ann. Sec. 5929, p. 4515), which provides for the allowance of damages and a reasonable attorney's fee in the case of vexatious refusal to pay, has no application to a company such as defendant which is organized and does business upon the stipulated premium plan. It is indeed provided by section 5762, R. S. 1929 (Mo. St. Ann. Sec. 5762, p. 4414), that any corporation, company, or association engaged in the business of life insurance upon the stipulated premium plan 'shall be subject only to the provisions of this article (article 4, Chapter 37, R. S. Mo. 1929, Mo. St. Ann. art. 4, c. 37, Secs. 5759-5783, pp 4412-4424), except that the provisions of sections 5684 and 5685, Revised Statutes 1929, shall be applicable.' The particular sections designated have to do only with the matter of the examination of companies by the insurance department and the payment of the expenses of such examinations. The language used in section 5762 would seem to disclose a clear legislative intent that no part of the Insurance Code shall apply to a company doing business upon the stipulated premium plan except the two sec-

tions specifically mentioned therein, and it necessarily follows, therefore, that section 5929 is inapplicable to the case.''

It would seem from all the legislative history noted and the decisions on similar matters referred to that the court in the Key case, *supra*, reached a conclusion that was inescapable. If so, then by the same process of reasoning, stipulated premium plan companies and policies are not subject to the ''suicide'' statute (5851), which is likewise a part of the general statutes pertaining to life insurance, and not a part of Article IV, Chapter 37 of the statutes of 1939. Unless and until the Legislature by statute makes the ''suicide'' statute applicable to stipulated premium plan policies, such policies may legally except, as a risk not assumed, the death of insured by self-destruction.

The above disposition of this case disposes of the other points made by appellant, and we need not discuss them further. The judgment of the Circuit Court is affirmed. It is so ordered. All concur.