The State ex rel. Richey v. McGrath.

THE STATE *ex rel.* RICHEY *et al.* v. McGRATH, *Secretary of State.*

1. **Constitution**: BUILDING ASSOCIATION: INCORPORATION TAX. The legislature cannot exempt incorporators of building associations from paying the incorporation tax required by the constitution. (Art. 10, sec. 21).

VOL. 95—13

2.  **Building Association**: LEGISLATIVE DECLARATION.  A building
association, whose leading purpose is to make money for its stock-
holders, is not made a benevolent institution by a legislative dec-
laration to that effect.

*Mandamus.*

PEREMPTORY WRIT DENIED.

*Berry & Richey* for relators.

(1)  When the constitutionality of a statute is to
be determined, resort should not be made to mere ver-
bal criticisms, subtile distinctions, abstract reasoning,
or nice differences in the meaning of words.  It will be
presumed to be constitutional till the contrary plainly
appears, and it is only when it manifestly infringes
some provision of the constitution that it can be declared
void.  In cases of doubt every possible presumption
not directly and clearly inconsistent with the language
and subject-matter is to be made in favor of the statute.
The burden is upon those who allege the unconstitu-
tionality of an act to prove it without a doubt.  *Kelly
v. Meeks*, 87 Mo. 396 ; *State v. Able*, 85 Mo. 64; *Phil-
lips v. Railroad*, 86 Mo. 540; *State v. Addington*, 77
Mo. 110 ; *State ex rel. v. Laughlin*, 75 Mo. 147 ; *State
ex rel. v. Ranson*, 73 Mo. 78 ; *State v. Able*, 65 Mo. 357 ;
*State v. New Madrid*, 51 Mo. 82 ; *State v. Cope*, 48 Mo.
468 ; *State ex rel. v. Finn*, 8 Mo. App. 341 ; *St. Louis
v. Griswold*, 58 Mo. 175.  (2) The word "benevolent"
has no legal meaning separate from its usual meaning.
*Norris v. Thompson*, 19 N. J. 307.  (3) The word
"benevolent," in the constitution, should be given its
usual and generally accepted meaning.  *State ex rel. v.
Leffingwell*, 54 Mo. 458.  (4) Under the definitions of the
word "benevolent," the term "benevolent associa-
tion" includes and comprehends the organization
proposed in this case, as shown by the objects of the

The State ex rel. Richey v. McGrath.

organization as set forth in its articles of association, and as those objects of similar organizations are generally known to the people of the state. *Chamberlain v. Stearnes*, 111 Mass. 267 ; *Norris v. Thompson*, 19 N. J. 307 ; *Thompson v. Norris*, 20 N. J. 489. (5) The legislature of the state regarded building associations as benevolent institutions. Laws of 1887, p. 111. (6) It is the policy of the state to protect the families of the classes benefited by building associations, and in furtherance of that policy, courts should be liberal in the matter of interpretations. *Megehe v. Draper*, 21 Mo. 510 ; *State v. Dill*, 60 Mo. 433.

*B. G. Boone*, Attorney General, *Eugene Wilkerson* and *R. F. Walker* for respondent.

(1) The object, nature, and purposes of any corporation are to be determined from the law authorizing its creation. *Kitchen v. Railroad*, 59 Mo. 517. (2) The proposed corporation is a business, and not a benevolent one. R. S., 1879, sec. 974; *Sheren v. Mendenhall*, 23 Minn. 92 ; *College v. Commonwealth*, 8 Kan. 344 ; *New Orleans v. St. Patrick*, 28 La. Ann. 512. (3) Building associations, not being benevolent institutions, are not exempt from the incorporation tax. Const. of Mo., art. 10, sec. 21.

NORTON, C. J.—This is a proceeding by mandamus in which the relators seek to compel the defendant, as secretary of state, to file and record in his office certain articles of association or agreement made by relators and presented by them to defendant, and to issue a certificate of incorporation based thereon. The secretary of state refused to file the articles and issue a certificate of incorporation on the ground that he was not authorized to do so until the relators paid into the state treasury the sums required to be paid by article 10, section

21, of the constitution, and Revised Statutes, section 708.

The said section of the constitution is as follows : "No corporation, company, or association, other than those formed for benevolent, religious, scientific, or educational purposes, shall be created or organized under the laws of this state, unless the persons named as corporators shall, at or before the filing of the articles of association or incorporation, pay into the state treasury fifty dollars for the first fifty thousand dollars or less of capital stock, and a further sum of five dollars for every additional ten thousand dollars of its capital stock." Section 708, Revised Statutes, directs how such payments shall be made, and what shall be evidence of it to the secretary of state.

The relators claim that, by virtue of section 12, Acts 1887, page 114, under which they seek to organize and become incorporated, they are exempted from the payment of the sums required to be paid by the constitution and statute above referred to. Said section 12 is as follows : "As building associations are only aggregations of laborers, mechanics, workingmen, and working women, which start without any paid-up capital, and as their members only pay each month an assessment, in proportion to shares, for the purpose of furnishing a home to each of its members in turn, which assessments stop the moment that every member has thus been furnished with such a home, they are really benevolent associations as mentioned in article 10, section 21, of the state constitution, and shall, consequently, be exempt from the payment of the incorporation fee (tax) mentioned in said article 10, section 21."

It may be said of the said act of 1887 that, with the exception of the said section 12, it is almost a literal copy of article 9, of Revised Statutes, page 175, devoted to mutual saving fund, loan and building associations,

and with said exception, it is, in all its essential feat-
ures, but a reënactment of said article 9, of the Revised
Statutes.   The necessity or reason for its reënactment is
not apparent unless it was to get such a legislative
declaration as is contained in said section 12, of which
declaration it may be said that if, in point of fact, the
incorporation authorized by the act is not a corporation
for benevolent purposes, the declaration of the legisla-
ture that it is a benevolent corporation does not make it
so, any more than a legislative declaration that a horse is
a cow would alter the fact and convert the horse into a
cow.   Such legislative legerdemain is to be condemned,
not approved.

The nature or character of corporations authorized
to be created by the act of 1887 is to be determined from
the purpose to be accomplished and the business they
are authorized to engage in.   It is stated in the relators'
articles of association that the capital stock of the com-
pany is one million dollars, divided into ten thousand
shares at the par value of one hundred dollars each;
that one hundred shares have been subscribed, and that
the first payment has been made thereon; that the object
of the association is to enable the members, or those who
may become such, to accumulate, by small monthly con-
tributions from their savings, a fund out of which they
can secure homes for themselves and families.

It is provided by section 4 of said act of 1887 as fol-
lows:   "Every such corporation shall only lend its
funds on real-estate security, or on the security on its
own shares of stock, such loans being made upon the
terms and conditions and in the manner which shall be
specified in its by-laws.   No loans shall be made on
shares of stock to an amount exceeding the installments
actually paid on such shares.   Such corporation may,
however, employ a portion of its capital stock in the
purchase of real estate and the erection of buildings
thereon for rent or otherwise.   If at any time it shall

happen that there is no demand by the shareholders for the funds of such corporation, then such funds may be loaned to others who are not shareholders at such rate of interest as the directors may fix. No loans shall be made to members or others on personal security or on leasehold." It is also provided in section 7 that "no premiums, fines or interest on such premiums that may accrue to said corporation, according to the provisions of this article, shall be deemed usurious, and the same may be collected as debts of like amount are now collected by law."

It is clear, we think, from the sections above quoted as well as from the articles of association, that the leading purpose of this corporation is not to promote benevolence or charity, but to better the pecuniary condition of its members or shareholders alone, and we are unable to see how the fact that such an association may tend to promote frugality and economy, and open up a way "whereby the shareholders, out of their savings, may be enabled to secure houses, or loan their savings to others at high rates of interest, to be fixed by the directors," can be said to impress or characterize the association as one formed for benevolent purposes, when the chief incentive to each stockholder is that he may benefit himself.

A peremptory writ is denied and the proceeding dismissed. All concur.