OLD RELIABLE ATLAS LIFE SOCIETY, a Corporation, Appellant, v. C. LAWRENCE LEGGETT, Superintendent of Insurance of the State of Missouri, Respondent, No. 43069—265 S. W. (2d) 302.

Court en Banc, March 8, 1954.

*Allen McReynolds, Jack S. Curtis, John K. Hulston* and *Farrington & Curtis* for appellant.

*J. E. Taylor,* Attorney General, *James H. Meredith, Bernard L. Cohen, Frank C. Mann* and *Mann, Mann, Walter & Powell* for respondent.

ELLISON, J.—This is a suit for a declaratory judgment brought by the plaintiff-appellant Old Reliable Atlas Life Society against the defendant-respondent Superintendent of Insurance under Art. V, Sec. 22, Const. Mo. 1945 and Sec's 536.010-140, R.S. 1949, V.A.M.S., relating to the conduct of the business of life insurance on the stipulated premium plan and as affecting limited payment policies under Sec's 377.200-460, and the extent of the Superintendent's supervisory powers under Sec's 374.040, .090 to .110, .140, .190, .210-.230. It is contended by respondent that guaranty or reserve funds have been illegally depleted to the extent of over $580,000 by refunds to policy-holders of premiums in excess of the face of certain policies at the time of death. And there are other legal questions.

The Society has taken over the business of certain former Societies organized under prior laws, and the questions to be decided are whether policies issued under those laws and assumed or reissued by the appellant Society are subject to the more exacting requirements of its present stipulated premium charter, and whether sufficient reserves have been set up. We have appellate jurisdiction of the case

under Art. V, Sec. 3, Const. Mo. 1945, because the Superintendent of Insurance, a state officer, is a party to the suit as defendant-respondent.

E. J. Short and J. M. Ryan and their wives are the sole shareholders of the appellant Old Reliable Atlas Life Society, and were the founders of the original insurance organization, a benevolent society called the *Atlas Life Society*, incorporated in the circuit court of Carter County by pro forma decree in October, 1938, under Art. 10, Chap. 32, Sec's 4996, 4997, 4998, *5014*, R.S. Mo. 1929 for the purpose of furnishing funeral or burial benefits not exceeding $300 for its members *over* 65 years old. Under Sec. 5014, supra, the Society was exempt from the provisions of the general insurance laws of the state. Under Sec. 4998, any such society could avail itself of the privilege of amending its constitution or articles of association, or re-incorporating as a non-profit fraternal benefit society with a lodge system, paying death or disability benefits and accumulating and maintaining the necessary reserve under Sec's 5990, 5994, Art.13, Chap. 37, R.S. Mo. 1929.

About two months later on December 12, 1938, the foregoing four shareholders incorporated the *Sunset of Life Society* under Sec. 4997, supra, by pro forma decree in the circuit court of Jackson County, for the purpose of issuing ''membership benefit certificates'' to members who were 66 years of age or older, insuring their lives in a stated amount.

On December 11, 1940, this court rendered a decision in State ex inf. Williamson v. Black, 347 Mo. 19, 25-6(3, 4), 145 SW. (2d) 406, 408 (3), holding a Burial Association incorporated under Sec. 5014, supra, as an association for benevolent purposes actually was a business corporation authorized to operate solely upon an insurance basis; and that as to such corporation Sec. 5014 was unconstitutional because violative of Sec. 21, Art.10, Const. 1875, in that the associations operate for profit. But the decision authorized the trial court to suspend the operation of its decree for a reasonable time until the Association could re-incorporate under existing applicable statutes or take advantage of new legislation, if any, enacted at the next legislative session. See also State ex inf. McKittrick v. Koon, 356 Mo. 284, 291, 201 SW.(2d) 446, 448.

On February 10, 1941, the same four shareholders, acting through certain residents of the District of Columbia, brought about the incorporation there of the *National Sunset of Life Society* under a statute similar to the Missouri statutes whereunder the two foregoing societies had been incorporated. But that statute did not authorize the conduct of a life insurance business. This District of Columbia Society was organized for the purpose of taking over, and it did take over, all the business of the aforesaid Sunset of Life Society of Missouri and assumed all of its liabilities. The certificates of the latter called for the payment of $100 to a designated beneficiary upon

the death of the insured, in consideration of the payment of monthly dues based on the age of the member, aggregating $90. A comparable certificate was issued by the District of Columbia Society embodying the same paid up provision.

Some five months thereafter on July 22, 1941, the present appellant *Old Reliable Atlas Life Society,* hereinafter called the *Old Reliable Society* was incorporated in this state as a stipulated premium company under Sec's 377.200-460, supra. Three days later, on July 25, 1941, the then Attorney General instituted a suit in the circuit court of Greene County against Messrs. Short and Ryan [and another], wherein they admitted the original Atlas Life Society no longer had a legal existence and asked for the appointment of a receiver to take charge of its affairs, business and assets. Short was appointed and continued its operations under receivership until November 30, 1942, when the court authorized the Old Reliable Society to reinsure its outstanding policies as prescribed by the court, which was done.

Theretofore, on September 17, 1941, the Old Reliable Society had taken over the assets and assumed the liabilities of the aforesaid Sunset of Life Society and the National Sunset of Life Society of the District of Columbia pursuant to resolutions reciprocally adopted by both societies. On November 30, 1942, the Old Reliable Society assumed the obligations and contracts of the original Atlas Life Society, thereby concentrating the business of the three former societies in the present appellant Old Reliable Society, which now has many policyholders in this state and more than $1,000,000 in assets.

The aforesaid Messrs. Short and Ryan, two of the four original stockholders, held the offices of President, Secretary and Treasurer in all these societies which had a common office in Springfield, Missouri. With the exception of the original Atlas Life Society all certificates or policies of insurance were issued from that office. And with minor exceptions all of them were issued to residents of Missouri.

The respondent Superintendent of Insurance contends that regardless of their prior status all these certificates issued by the Sunset of Life Society and National Sunset of Life Society became limited payment policies of life insurance when the liability thereon was assumed by the Old Reliable Society and it accepted future premiums thereon. And he further maintains that the appellant Society thereupon was required by Sec. 377.270 to determine actuarially and deposit with the Superintendent of Insurance a separate reserve fund in approved securities for the purpose of sustaining those policies after the cessation of premium payments—that is to say, after the policyholder's payments aggregated $90 on a policy maturing for $100.

The factual determination of whether sufficient reserves had been set up involved periodical examinations of the insurance companies by auditors of the Division of Insurance, and seven such examina-

tions were made between October 19, 1942 and January 18, 1950. The reports on the first two of these made certain technical criticisms which were corrected to the satisfaction of the Insurance Department. But the report on the third examination, of September 30, 1946, required the setting up of a reserve fund of $93,707.52 to support an impairment of the limited payment policies of the National Sunset of Life Society assumed by the Old Reliable Society.

This fund was calculated under Sec. 377.270, supra, the stipulated premium statute applicable to limited payment policies, which required the Society to charge at least the net term rate for the kind of policy issued, increased by such sum as would at 4% pay out the policy on an actuarial basis at the end of the paying term, said increased premiums to be deposited with the Insurance Department in a separate reserve fund in the form of approved securities. The respondent Superintendent of Insurance contends the foregoing Sec. 377.270 was and is applicable to the policies issued by both the National Sunset of Life Society and the Sunset of Life Society which the appellant Old Reliable Society took over—this on the theory that they were limited payment policies within the meaning of the statute because upon the payment of $90 premiums the policyholders were relieved of paying further premiums though the policy coverage was $100.00. And the Superintendent contends this is true, regardless of the prior status of the policies, from the time the Old Reliable Society assumed them and accepted future premiums thereof. The appellant Society disputes this.

The report on the fourth examination, made November 30, 1947, asserted an impairment of the reserves fund of $162.325.03, an increase of nearly $69,000 over that at the third examination. Thereafter on January 10, 1948, the officers of the company filed this suit for a declaratory judgment in the Cole County circuit court to obtain a construction of the then Art. IV, Chap. 37, R.S. Mo. 1939, Sec's 377.200-377.270, supra, particularly the latter statute covering limited payment policies on the stipulated premium plan. While the suit was pending the examiners' report on the fifth examination was made January 18, 1950, and asserted an additional liability against the appellant Society of $584,427.10 [page 24 thereof].

The basis therefor was stated in the report to be that the appellant Old Reliable Society had: "adopted the practice of *returning* premiums paid in excess of the face of the Sunset Division policies at the time of death," which practice was continued until January, 1949, and thereafter, at least in cases where the Company had previously *written a letter* agreeing to return such premiums. The examiners' report declared the practice had become so general that to avoid discrimination all policies of the Sunset of Life Division should be treated in the same manner, the result of which would be to reduce the reserve fund. This "Division", as we understand, included both the Sunset

of Life Society and the National Sunset of Life Society. The brief of the appellant Old Reliable Society concedes that in a few instances the company made "special settlements with a few of the subscribers," but that when admonished by counsel the practice was terminated, and that on May 22, 1950, there were only 212 such letters outstanding, out of 8771 policyholders in the Sunset Division.

The Old Reliable Society filed an amended petition in its declaratory judgment suit in the Cole County circuit court in April, 1950, and later a stipulation between the parties was filed eliminating a number of issues, and leaving only the following, upon which written findings were requested:

(a) whether the first year death claims should be paid out of the first year premiums or from the insurance or mortuary funds of the Society;

(b) whether Sec. 377.270, supra, is applicable to the Sunset of Life and National Sunset of Life policies assumed by the appellant Old Reliable Society;

(c) whether the violations of the discrimination clause set out in the aforesaid fifth examination of the Department made on January 18, 1950, would result in rewriting all of the policies in that classification;

(d) what is the extent of the supervisory powers of the Superintendent of Insurance.

The defendant-respondent Superintendent of Insurance, in addition to denying the allegations in the plaintiff-appellant Old Reliable Society's petition, asked the trial court to decide:

(e) what disposition should be made of policy fees collected by the appellant Society;

(f) whether the profits and losses from the purchase and sale of bonds and securities [307] should be charged or credited to the expense fund or to the insurance fund.

The trial court made the requested findings, holding:

"(1) That Sections 377.200 through 377.460 inclusive, R.S.Mo. 1949, are not, insofar as the powers and duties of the Superintendent of Insurance are concerned, a code within itself and the supervisory powers of the Superintendent include those provided for in Chapter 375, R.S.Mo. 1949 as well.

"(2) That Section 377.260 must be construed as relating only to policy claims arising subsequent to the first policy year as well as to premiums thereafter accruing and that all first year death claims must be paid from first year premiums and not from the funds provided for in Section 377.260. That defendant may in the lawful discharge of his duties require plaintiff to restore to such funds any first year death losses paid therefrom.

"(3) The sums of money paid to the agents of the company which has been called a policy fee and which continues the insurance in force

for a stated period of time is a premium and becomes a part of the premium for the first policy year. All portions of the premium including the policy fee paid after the policy has been in effect for one year shall be paid into the insurance fund in accordance with the provisions of Section 377.260. The defendant in the lawful discharge of his duties may require plaintiff to reimburse such fund for all portions of the premium paid after the first policy year.

"(4) That the certificates issued by Sunset of Life Society and National Sunset of Life Society and assumed by plaintiff were limited payment policies within the meaning of Section 377.270, and when assumed became subject to its provisions and plaintiff was thereafter required to set up and maintain the special fund provided for in this section as though the contract had originally been issued by plaintiff.

"(5) That the payments made by plaintiff to beneficiaries of policyholders in its Sunset of Life division representing the excess of premiums paid in excess of the face of the policy constituted an unlawful and unauthorized diversion of the insurance or mortuary fund of the company, and that defendant may in the lawful discharge of his duties require plaintiff to restore such funds.

"(6) That all gain or loss accruing either from the purchase or sale of securities in which the fund created under Section 377.260 are invested must be charged or credited to such fund and not to the expense or surplus funds, and that defendant in the lawful discharge of his duties may require plaintiff to restore to such fund the amount found to be plaintiff's net gain or profit from this source."

The judgment on said findings was as follows:

J-1 "It is admitted by the parties and declared by the Court that the plaintiff is a corporation duly organized and existing under Sections 377.200 to 377.460, both inclusive, Revised Statutes of Missouri, 1949, relating to the business of life insurance on a stipulated premium plan, and that it is engaged in the business of life insurance on a stipulated premium plan; that defendant C. Lawrence Leggett is the duly appointed, qualified and acting Superintendent of the Division of Insurance, Department of Business and Administration of the State of Missouri.

J-2 "That the provisions of Sections 377.200 to 377.460, both inclusive, Revised Statutes of Missouri, 1949, formerly Article 4, Chapter 37, Sections 5870 to 5894, both inclusive, Revised Statutes of Missouri, 1939, and Sections 374.090 to 374.110, 374.140, 374.190, 374.210 to 374.230 and 375.420, Revised Statutes of Missouri, 1949, do not, as plaintiff alleges, insofar as the powers and duties of the defendant are concerned, constitute a code within itself, but on the contrary the supervisory powers and duties of the defendant over the plaintiff company and all companies licensed to do an insurance business on the stipulated premium plan in Missouri, extend as well to those [308] powers and duties provided for in Chapter 375, Revised Statutes of

Missouri, 1949, and particularly in Sections 375.560 and 375.640 of said chapter, and that it was the legislative intent in the enactment of said statutes to give to the Superintendent of the Division of Insurance the same regulatory powers, with respect to the plaintiff company and those companies authorized to do an insurance business on the stipulated premium plan in Missouri, that he possesses with respect to insurance companies licensed by this state to engage in the business of insurance of other classes and plans.

J-3 ''That that portion of Section 377.200, Revised Statutes of Missouri, 1949, wherein it is provided that insurance companies engaged in the insurance business, as therein defined 'shall be deemed to be engaged in the business of life insurance upon the stipulated premium plan, and shall be subject only to the provisions of Sections 377.200 to 377.460, except that the provisions of Sections 374.090 to 374.110, 374.140, 374.190, 374.210 to 374.230 and 375.420, R.S. Mo. 1949, shall be applicable', has relation only to the charter power of the company to contract with its policyholders and to prohibit its *invasion* of fields of insurance other than life insurance on a stipulated premium plan, and has no relation to the supervisory powers or duties of the Superintendent of the Division of Insurance respecting such companies, or the conduct of the insurance business in which they are engaged.

J-4 ''The insurance fund provided for by Section 377.260, R.S.Mo. 1949, is created solely by crediting to it the mortuary or net premium paid for the second and subsequent years following the issuance or effective date of the policy and the interest or other increment from the investment of such funds. No portion of the premiums paid to continue the policy in force for one year from the date of its issuance is required to be deposited to this fund. The fund thus created is a trust or reserve fund. The 'policy obligations', provided in said section to be paid from said fund, refer only to policy obligations accruing under policies subsequent to the first policy year or subsequent to one year following the effective date of the policy. No first year death claims, that is to say, claims arising from the death of a policyholder occurring during the first twelve months following the date of the issuance or effective date of the policy, can lawfully be paid out of said insurance fund.

''It is established by the evidence, through both pleading and admission of the plaintiff, that plaintiff has paid all such first year death losses from its insurance fund, created as provided in Section 377.260, R.S.Mo. 1949. The defendant is invested with the power and charged with the duty, as provided in paragraph (1) of this decree, of determining the amount of said payments, and may in the lawful discharge of his duties require plaintiff to restore to such insurance fund the amount so paid therefrom.

J-5 ''Where, as admitted by the plaintiff in this case, a policy fee is charged and collected from a policyholder at the time the appli-

cation for insurance is taken, or otherwise prior to the payment of the first regular premium, which policy fee continues the insurance in force for a stated period of time, following which the first payment is made on the regular premium, such policy fee is, in fact, a premium and becomes a part of the premium for the first policy year and all premiums or portions of premiums paid to continue the policy in force after the expiration of twelve months from its issuance or effective date constitute a premium paid 'after the first policy year' and that portion thereof constituting the mortuary or net portion of such premium is required to be deposited to the insurance fund under the provisions of Section 377.260.

J-6 "The 'membership and benefit certificates' issued by Sunset of Life Society, a corporation, the liability on which was subsequently assumed by National Sunset of Life Society, a corporation, and thereafter assumed by plaintiff, and the 'membership and benefit certificates' originally [309] issued by National Sunset of Life Society, a corporation, the liability on which was subsequently assumed by plaintiff, constituted, when assumed by plaintiff, limited payments life insurance policies within the meaning of Section 377.270, R.S.Mo. 1949, and plaintiff was required under the provisions of said statute to set up and maintain an account of each of said certificates, the special fund provided for by Section 377.270 in that amount and as though said certificates or policies of life insurance had been originally issued by plaintiff, and the defendant is vested with the powers and charged with the duties, as provided in paragraph (1) of this decree, of determining the amount necessary to be paid into said fund by plaintiff and to require the payment thereof.

J-7 "The evidence establishes, through the admission of plaintiff, that it has in the past issued through its Sunset of Life Division policies of life insurance to policyholders over the age of sixty-six years, which contracts of life insurance provide for the payment of a level annual premium during the lifetime of the insured, and that plaintiff has in the past made an agreement with certain of its said policyholders that it would return as a part of the death benefit on their policies an amount equal to all premiums paid by such policyholder in excess of the face value of the policy. Such agreements are void and all sums of money heretofore paid by plaintiff representing the amount or equivalent of premiums paid in excess of the face of the policy as a part of the death benefit or claim, constituted an unlawful and unauthorized diversion of the insurance or mortuary funds of the plaintiff company, and defendant is vested with the power and charged with the duty of determining the amount so paid and of requiring plaintiff to restore said amount to such insurance or mortuary fund.

J-8 "All sums of money received or disbursed by plaintiff representing the gain or loss accruing either from the sale or purchase of

·securities in which the insurance funds of the company created as provided in Section 377.260, R.S. Mo. 1949, are invested, must be paid out of or credited: to said insurance fund and are not lawfully paid from or credited to the expense fund or surplus funds of the plaintiff, and defendant is vested with the power and charged with the duty to determine the amount of money representing the net gain to the plaintiff from the sale and purchase of securities in the investment of the insurance fund, and to require plaintiff to restore said amount to said fund.''

██ Appellant's first contention is that the trial court *erred* in declaring and adjudging [supra § J2] that Sec's 377.200-460, R.S. 1949 dealing with *stipulated premium* life insurance companies, together with the other sections in Chapters 374 and 375 specifically mentioned in Sec. 377.200, supra, do *not* constitute a code within themselves, with respect to the powers and duties of the Superintendent of Insurance as regards stipulated premium companies.

This double negative, so to speak, means that appellant affirms these sections read together *do* constitute a code unto themselves as regards such companies, and that no other sections in Chapters 374 and 375 have any application to stipulated premium companies. On that issue appellant cites three decisions.[1] None of them are in point. They merely announce a rule of statutory construction. The first two involved the Workmen's Compensation Act and the third a counterclaim in a suit to recover a school teacher's pay.

The statutes in Chapters 374 and 375 referred to in Sec. 377.200 are Sec's 374.090-110, 374.140, 374.190, 374.210-230, and Sec. 375.420. Chapter 374 in which these statutes with the prefix 374 appear, deals with the Division of Insurance. Sec. 375.420 ██ is in Chapter 375 applicable to *all* insurance companies.

An examination of these cited sections in Chapter 374 will show that they deal only with general subjects. Sec's 374.090-110 cover the appointment, qualifications, fees and duties of the actuary and chief examiner. Sec. 374.140 fixes the compensation of the Superintendent and his subordinates. Sec. 374.190 is directed to the examination of insurance companies and the procedure to be followed. Sec. 374.210 penalizes false testimony in examinations or investigations, refusal to give full and truthful information and the making of false certificates or entries, and prescribes punishments. Sec. 374.220 provides for the payment of expenses of proceedings against insurance companies and examinations thereof. And Sec. 374.230 exacts the payment of fees by insurance companies for examinations, valuations of policies and the filing of various papers. Sec. 375.420

---

[1]Kavanagh v. Dyer O'Hare Hauling Co., 189 SW.(2d) 157, 160(3); Dees v. Miss. River Fuel Corp., 192 SW.(2d) 635, 640 (1-3); Brinkman v. Common School Dist., 238 SW.(2d) 1, 6(7).

authorizes the recovery of damages for vexatious delay in the payment of losses in suits on policies of any insurance company.

As will be recalled Sec. 377.200 is applicable to stipulated premium insurance companies and provides they shall be subject only to the provisions of that chapter, except that the sections mentioned in the preceding paragraph hereof shall be applicable. But, as stated in the second preceding paragraph Chapter 375 in which Sec. 375.420 appears is applicable to *all* insurance companies.

We do not agree with appellant's contention that the trial court *erred* in ruling the sections in Chapter 377 [377.200 to 377.460],—all dealing with stipulated premium life insurance—together with those in Chapters 374 and 375 specifically mentioned in Sec. 377.200, do *not* constitute a code unto themselves with respect to the powers and duties of the Superintendent of Insurance as to such companies. In other words, appellant asserts the sections mentioned *do* constitute a code unto themselves and that none of the other sections in Chapters 374 and 375 are applicable. The sections in Chapter 374 which Sec. 377.200 does mention, are Sec's 374.090-110, 374.140, 374.190, 374.210 to 374.230. These latter deal with the actuary and chief examiner of the insurance division, their duties and fees, examinations of companies, false testimony, expenses and fees. Sec. 374.040 covers the general duties of the Superintendent of Insurance but that section is not mentioned in Sec. 377.200, supra. However, Sec. 374.190—which is mentioned in Sec. 377.200—covers the duties of the Superintendent with respect to examinations of *any* companies.

Further, Chapter 375, itself, is expressly applicable to all insurance companies and Chapter 374 covers the powers and duties of the Division of Insurance in its supervision of insurance companies and is obviously applicable to all insurance companies. It is not to be thought that stipulated premium life insurance companies are exempt from the supervision of the Division of Insurance.

The regulatory provisions in Sec's 377.200-460 dealing with stipulated premium plan insurance companies are concerned with the incorporation, organization, powers and operation of such companies. Chapter 374 covers the powers and duties of the Superintendent of Insurance. Sec. 374.040 requires him to issue certificates of authority to transact insurance business to *all* companies of whatever kind that have fully complied with the laws of this state, whether they be foreign or domestic. Under Sec. 374.190 they must be examined. Chapter 375 similarly applies to *all* insurance companies doing business in the state. Sec. 375.010 requires them to obtain from the Superintendent a certificate of compliance with our laws. Under Sec. 375.380 they cannot declare dividends except from surplus profits.

Under Sec. 375.540 when the capital stock or guarantee fund of capital stock insurance companies of specified capitalizations is im-

paired in specified percentages ▓▓▓ their licenses may be revoked, or suspended until the deficiency is made good. And under Sec. 375.560(8) the Superintendent may institute a suit or proceedings to enjoin or dissolve a stipulated premium plan life insurance company organized under Chapter 377, R.S. 1949 if it be found upon examination to be in such condition that the company could not meet the requirements for incorporation and authorization specified in said Chapter. In this instance this suit was not brought by the Superintendent of Insurance but is a suit for a declaratory judgment brought by the appellant company involving the same issues.

Appellant argues that in every instance where the courts have been called upon to interpret the meaning of Sec. 377.200 which defines the powers and duties of stipulated premium plan life insurance companies, they have held such companies not subject to any statutory provisions other than those set out in that section.

On that point appellant cites three decisions. The first is Key v. Cosmopolitan Life Etc. Ins. Co., 102 SW. (2d) 797, 800(8). The plaintiff there, in a suit for a death loss under a stipulated premium plan life insurance policy, sought damages and an attorney fee for vexatious delay under Sec. 5929, Art. 10, R.S. 1929 [now Sec. 375.420] which was applicable to *any* insurance company on any kind of insurance. The policy was issued under Sec. 5762, Art. 4, R.S. 1929 [now Sec. 377.200]. That section provided policies under the stipulated premium plan should be subject *only* to the provisions of said Article 4 except that the provisions of Sec's 5684 and 5685, Art. 1, R.S. 1929 covering the ''Insurance Department'' should be applicable. Sec. 5684 concerned insurance examinations, and Sec. 5685 the expenses of proceedings against insurance companies, as Sections 374.190 and 374.220 do now. The decision held the plaintiff could not recover damages for vexatious delay in the payment of a loss under a policy issued under the stipulated premium plan. Since the decision of the Key case the stipulated premium plan section, 377.200, has been re-enacted and now expressly includes Sec. 375.420 covering damages for vexatious delay.

The second decision cited by the appellant Society here is Mattero v. Central Life Insurance Co., 202 Mo. App. 293, 300-1 (2, 3), 215 SW. 750, 751 (2, 3). It was a suit on a life insurance policy calling for the payment of a fixed premium annually for twenty years. The defense was fraud in the procurement of the policy through misrepresentations as to the health of the insured and by having a third party impersonate her in the medical examination. The plaintiff filed two motions, one to strike out these defenses, and the other on the ground that the defendant company had failed to attach to the policy a copy of the insured's application therefor or to indorse on the policy the substance of the application, as required by Sec. 6978, R.S. 1909, now Sec. 377.350, applicable to stipulated premium companies.

The trial court sustained both motions and rendered judgment for the plaintiff. The defendant company refused to plead further and appealed. The Court of Appeals reversed the ruling of the trial court on the ground that the appellant was not a stipulated premium company and was not required to attach a copy of the insured's application to the policy, and also on the ground that policyholders in stipulated premium companies were required by Sec. 6968, R.S. 1909, now Sec. 377.260, to pay an extra premium under specified conditions whereas "old line" or "level rate" insurance companies, such as the appellant, were not.

The third case cited by appellant is Baker v. Nat'l Home Life Ins. Co., 239 Mo.App. 990, 995-999, 195 SW. (2d) 912. It was conceded that the defendant company there was licensed and operating under the stipulated premium plan. The policy provided that if the insured committed suicide within one year from the date thereof the amount payable thereunder should be only the amount of premiums already paid. But Sec. 5851, R.S. 1939 [now Sec. 376.620] in the chapter applicable to life and accident insurance provided that in *all* suits upon policies of insurance on life issued by any company doing business in the state, to a citizen of this state, it should be no defense that the insured committed suicide unless it be shown that the insured contemplated suicide when he applied for the policy.

Sec. 5873 [now Sec. 377.200] applicable to stipulated premium plan life insurance companies provided that companies operating thereunder should be subject only to the provisions of the article, except that Sec's 5794 and 5795, R.S. 1939 [now Sec's 374.190 and 374.210-230] should be applicable, these merely covering examinations of companies by the Insurance Division, false testimony, etc., expenses of proceedings and fees. On this basis the Court of Appeals held the suicide statute, now Sec. 376.620, supra, did not apply to stipulated premium plan insurance companies, and that they could legally exclude the risk of suicide by the insured.

But notwithstanding these three decisions on collateral matters paragraph J-2 of the trial court's decree in this case held that the provisions of Sec's 377.200-460, R.S. 1949, dealing with stipulated premium plan life insurance, are not a code within themselves insofar as the powers and duties of the Superintendent are concerned. On the contrary the decree held the *supervisory* powers and duties of the Superintendent include those provided for in Chapter 375, R.S. 1949, applicable to all insurance companies, in particular Sec. 375.560 providing for the winding up of insurance companies, and Sec. 375.640 authorizing the Superintendent to take charge of them. And it further declared it was the legislative intent to give the Superintendent the same regulatory powers over the plaintiff-appellant Old Reliable Society and other companies operating on the stipulated

premium plan that he possesses with respect to insurance companies licensed and operating on other insurance plans.

This is conclusive, it seems to us, and clearly authorized the trial court in this case to entertain the instant suit though it was a suit for a declaratory judgment instituted by the plaintiff-appellant Old Reliable Society and not by the Superintendent of the Insurance Division. The latter asserted his contentions by answer.

Sec. 375.560 specifically authorizes the Superintendent to institute proceedings to wind up companies when it appears from examination that: (1) the capital stock or guarantee fund of any company heretofore or hereafter incorporated and organized under the laws of this state and doing *any kind* of insurance business in the state is impaired; or (5) that such company is found upon examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, creditors or the public; and (8) that such company is organized under Chapter 377 [among others] applicable to stipulated premium plan companies, and is found to be in such condition after examination that it could not meet the requirements for incorporation and authorization specified in the law under which it was incorporated or is doing business.

Paragraph J-3 of the decree, supra, held the inclusion in Sec. 377.200—applicable only to stipulated premium insurance companies —of the seven specified sections in Chapters 374 and 375 dealing with the Insurance Division and all insurance companies, did not confer on stipulated premium companies the power to *enter* other insurance fields, but on the other hand it did not restrict the powers of the Superintendent of Insurance to *supervise* and regulate companies in *all* fields of insurance.

Paragraph J-4 of the trial court's decree dealt with the premiums on stipulated premium plan policies, and involved a consideration of Sec's 377.250, 377.260 and 377.270, R.S. 1949. The first of these provides for the exaction of a mortuary premium computed on a specified basis with a minimum 20% loading for age 20 and under, increasing 1% each year.

Sec. 377.260 provides that *after* the first policy year the mortuary premium payments on each policy with the aforesaid loadings, together with all interest and other accumulations, except the special loading for limited payment policies as provided in Sec. 377.270, shall constitute the insurance fund of the company from which all policy obligations shall be paid, the remainder in the fund not required to meet policy claims to be set aside as an emergency fund which may be deposited with the Insurance Division. If the emergency fund becomes exhausted the Superintendent shall require the company to exact as extra premium sufficient to meet the amount of the maximum policy issued, apportioned equitably. If any member

fails timely to pay the *extra* premium his policy shall be commuted proportionately.

Sec. 377.270 provides that the premiums on limited payment or investment policies shall not be less than the net term rate for the kind of policy issued, increased by such sum as will, improved at 4%, actuarially equal the net single premium for the attained age at the ending of the paying term of the policy. This increase in premium is to be reserved in a separate fund for the purpose of sustaining such policies after the cessation of premium payments, and shall be deposited with the Insurance Division in such securities as are required by law.

If any company doing business under the stipulated premium plan shall fail to state in its limited payment policies the portion of each premium to be held by it for the purpose of sustaining the policy after the years during which the premiums are to be paid, then all such limited payment or investment policies issued shall be valued actuarially on a 4% interest basis.

Both parties agree that the appellant Old Reliable Society is a stipulated premium life insurance company. Appellant contends that since it is, it is subject only to the provisions of the statutes in Chapter 377 applicable to such companies, and the statutes in other chapters specifically referred to in Sec. 377.200. This would exclude Sec. 375.560(8), which is not referred to in Sec. 377.200, but which is applicable to *any* insurance companies having capital stock or a guarantee fund, and which itself expressly cites Chapter 377 and provides that stipulated premium insurance companies may be wound up if they be found on examination to be in such condition that they could not meet the requirements for incorporation and authorization, specified in the law under which they were incorporated or doing business. That statute has been in force since the enactment of Laws Mo. 1933-4 [Ex.Sess.] p.65 and is of general application to all such insurance companies. Furthermore appellant's construction of the law would greatly circumscribe the supervisory powers of the Superintendent of Insurance over stipulated premium plan life insurance companies whereas Sec's 377.230-240-260(2)-300(2)-360(3)-380-410(2)-430(1) all accord to him those powers.

Appellant's second contention in argument is that: "All death losses including those occurring during the first policy year are 'policy obligations' and are therefore payable out of the insurance fund of the company under the terms of Sec. 377.260, R.S. 1949. Any other construction amounts to repeal or amendment of the statute."

Sec's 377.200-460 deal with stipulated premium plan insurance companies. Sec. 377.250 provides for a minimum mortuary premium with a loading. Sec. 377.260 provides that *after the first policy year* the mortuary premium with the loading as provided in Sec. 377.250, together with all interest and other accumulations of said fund ex-

cept the special loading for limited payment policies with interest as provided in Sec. 377.270 [applicable to limited payment policies] shall constitute the *insurance fund* of the company from which all policy obligations shall be paid, the amount remaining in the fund not required to provide for policy claims to be set aside as an *emergency fund* which may be deposited with the Insurance Division. ■ If the emergency fund becomes exhausted the Superintendent may require policyholders to pay an extra premium.

The trial court's decree ¶ J-4 ruled that by the express terms of Sec. 377.260, R.S. 1949 the "insurance fund" provided for therein is created solely by crediting to it the mortuary premium paid "after the first policy year", and that the initial premium is not a part of that fund but constitutes a trust or reserve fund. We think this ruling was correct.

■ Appellant's third contention is that the trial court erred in declaring and adjudging [¶ J-5] that the "policy fee" paid to its agents by the insured when application for the insurance was made, was a part of the premium for the first policy year, referred to in Sec. 377.250. These policy fees, when collected, were retained by the agents as a part of their commission. No part thereof was paid to the appellant or shown on its books. It maintains this is a common practice with many insurance companies, and that the Insurance Department had known of it for many years but made no objection until the last examination, made in 1950.

The respondent Superintendent of Insurance asserts that where this policy fee is collected it legally becomes a part of the premium for the first policy year, referred to in Sec. 377.250, and that the increase thus made carries the paid up insurance over into the second year 15 to 45 days. To that extent it becomes subject to the provisions of Sec. 377.260 and a part of the insurance fund provided for therein, from which all policy obligations are paid, with the overplus going into an emergency fund. To this appellant answers that the insurance policies issued provide they will not be in force until actually received by the named assured while alive and in good health. No authorities are cited by appellant on this point. It is simply a matter of statutory construction. But we think the trial court's conclusion was correct. In other words, the fee exacted by the agent was a part of the premium for the first policy year and was sufficient to carry the insurance over into the second year.

■ The appellant Old Reliable Society contends the trial court *erred* in holding in paragraph J-6 of its decree that the membership and benefit certificates originally issued by the Sunset of Life Society of Missouri and assumed by the National Sunset of Life Society of the District of Columbia, and the similar certificates issued by the latter Society, liability on both of which was subsequently assumed by the plaintiff-appellant Old Reliable Society, thereupon constituted

limited payment life insurance policies within the meaning of Sec. 377.270, R.S. 1949, and that the plaintiff-appellant was required by paragraph 2 of that statute to set up and maintain an account of each of said certificates in the special fund provided for in that section as though said certificates had been originally issued by the plaintiff-appellant, Old Reliable Society, and that the defendant-respondent Superintendent of Insurance was authorized to determine the amount necessary to be paid into said fund and require the payment thereof.

Appellant asserts the trial court's finding was erroneous "for reasons heretofore assigned." We are not clear as to what that means. It concedes that in September, 1941 it took over the assets of the Sunset of Life Society and the National Sunset of Life Society and assumed liability on the outstanding certificates or policies issued by those two companies. The policies provided a maximum benefit of $100 upon death of the named assured, but provided no cash surrender or loan values. And they further provided that when the assured had paid the premiums or dues up to $90 the policies should be fully paid up and no further premium payments were required.

Appellant's brief cites Sec. 377.400, which provides that "no stipulated premium life insurance company * * * organized under Sec's 377.200-460 shall * * * ▮▮▮▮ assume or reinstate the whole or any part of the risks of any other company * * * except with the approval of a majority of the policyholders or stockholders present and voting at a regular or special meeting duly called * * *."

The record in this case shows a meeting of all the stockholders of the Old Reliable Society was held on September 17, 1941, at which a resolution was unanimously adopted reciting the best interests of the members of that Society and of the National Sunset of Life Society of the District of Columbia would be served by the former's taking over all the business, assets and liabilities of the latter, including its outstanding benefit certificates according to the terms and conditions thereof and of the applications upon which the certificates were issued. That transfer was made, and an hour later the Board of Directors of the National Sunset of Life Society by resolution ratified and confirmed the transaction and transfer, and took steps to forfeit its own charter.

The brief of the appellant Old Reliable Society asserts that the only contract made by it required it to assume liability under the certificates of the National Sunset of Life Society *according to the terms thereof* and under the conditions set out in the application therefor. In other words the contract went no further than the assumption of the obligations under the original certificates. And none of the policies or certificates of the National Sunset of Life Society thus assumed provided for the keeping of an emergency reserve fund covering extra premiums. Appellant maintains that exaction is authorized only in Sec. 377.260 (2) and Sec. 377.270 (2, 3), solely applicable to

stipulated premium plan life insurance companies—of which the appellant Old Reliable Society was one and the National Sunset of Life Society was not.

On the other hand the respondent Superintendent of Insurance maintains that when the stipulated premium plan Old Reliable Society took over the benefit certificates of the National Sunset of Life Society it was required to exact the extra or emergency premium on them as well as its own policies, and to include it in the emergency fund. The appellant Old Reliable Society answers that the two statutes just cited are applicable only to policies *issued* by a stipulated premium plan company and that they do not apply to policies *assumed* by it.

On this issue appellant cites several decisions, one being Hayden v. Franklin Life Insurance Co., 136 Fed. 285, 294 (2, 3), dealing with a Missouri insurance company operating on an assessment plan under Sec. 7901, R.S. 1899, and being required by Sec. 7905 to accumulate an emergency or trust fund by assessment on policyholders which would be invested in securities and deposited with the Superintendent of Insurance. The insured made the payments on his policy as required thereby until the Missouri company reinsured its risks with the defendant Franklin Life Insurance Company of Illinois, an old line company, and also made one or two payments thereafter, but refused to make further payments. About two years later the insured died and the beneficiary in the policy sued the defendant for the face of the policy on the theory that it was old line insurance and protected by the Missouri non-forfeiture statute. The U.S. Circuit Court of Appeals refused to uphold this contention, and since the policy had lapsed as assessment insurance for failure to pay the assessments due, affirmed the judgment of the lower court denying a recovery.

Another case cited by appellant is Moran v. Franklin Life Ins. Co., 160 Mo.App. 407, 423. That case involved the same companies and issues as the Hayden case just reviewed. The Moran case said: ''Nor are we impressed by plaintiff's insistence that the contract of assumption transformed the assessment contract into a simple life policy on the level premium plan. For the contract of assumption to effect such a change, amounting to a complete novation, it must express clear intent to that effect. Hayden v. Franklin Life Ins. Co., 136 Fed. Rep. 285 [just reviewed.] The case before us does not do that. On the contrary it is plain therefrom that all the parties, the Merchants' Life Association, the policy holder, and the defendant, intended that the policy should be assumed as it was, viz.: as an assessment contract.''

But in the instant case Sec. 377.400, R.S. 1949 authorized the appellant Old Reliable stipulated premium company to consolidate with another company or to assume the latter's risks with the approval of a majority of its policyholders or stockholders present or voting at a

meeting duly called. And in the same Chapter, Sec. 377.260 required *appellant* to keep an insurance fund with any overplus going into an emergency fund, and in case of exhaustion thereof to levy extra premium. Under Sec. 377.270 the increased premiums were to be reserved in a separate fund. These exactions were essential ingredients or components of stipulated premium plan life insurance. And when appellant here took over the benefit certificates of the National Sunset of Life Society it necessarily obligated the Society to conform to those requirements. In an analagous situation it was held that where one insurance company had been taken over by another, the beneficiary in a life insurance policy was bound by the limitations on the defendant's liability as written in the reinsurance contract. Green v. American Life & Accident Ins. Co. (Mo. App.) 112 SW. (2d) 924, 928(3).

■ Appellant's last point complains of the admission of the testimony of an actuarial expert, Mr. Carol A. Nelson, called as a witness by the respondent Superintendent of Insurance. The objection made is that the testimony sought to be elicited amounted to an interpretation of a statute, which would be a legal question, whereas it appears Mr. Nelson was not a lawyer but simply an expert on insurance. He testified as an expert on the practical aspects of stipulated premium plan insurance, as affected by the mortuary fund, the expense fund and the age of the policyholders. The trial court heard the evidence subject to objection. We are unable to see that there was error in this. The chief objection made was that these matters were controlled by statute, and that the opinion of the witness was not controlling. We think it was not error for the expert to express an opinion applying hypothetical facts to particular kinds of insurance.

We find no error in the record and the judgment is affirmed. All concur.